### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**JAMES MCFARLIN**

      **Plaintiff,**

**v.**                                                                    **No.**

**BOARD OF COUNTY COMMISSIONERS**
**OF THE COUNTY OF ROOSEVELT,**

      **Defendant.**

### COMPLAINT TO RECOVER DAMAGES FOR VIOLATIONS OF SECTION 1983 OF THE CIVIL RIGHTS ACT AND THE NEW MEXICO TORT CLAIMS ACT

Plaintiff James McFarlin, by and through his attorneys of record, KENNEDY KENNEDY & IVES, brings this complaint under Section 1983 of the Civil Rights Act and the New Mexico Tort Claims Act to recover damages arising from Defendant's unlawful conduct towards Mr. McFarlin on January 15, 2018. In support of this Complaint, Mr. McFarlin states as follows:

### JURISDICTION AND VENUE

Plaintiff James McFarlin brings this Complaint under 42 U.S.C. § 1983 for damages arising from Defendant's deprivation of his civil rights. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction is proper because all parties reside, are employed or have significant contacts in the District of New Mexico. Additionally, Defendant's actions that give rise to Plaintiff's claims took place within the District of New Mexico. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's claims brought under NMSA 1978, § 41-4-1 through Section 41-4-30 of the New Mexico Tort Claims Act.

**PARTIES**

1.  Plaintiff James McFarlin ("Mr. McFarlin") is an individual who resides in Lake Havasu City, Arizona.

2.  Defendant Board of County Commissioners of the County of Roosevelt is a political subdivision of the State of New Mexico and is considered a "person" under 42 U.S.C. § 1983.

**FACTUAL BACKGROUND**

3.  At approximately 11:54 a.m. on January 15, 2018, Portales Police Dispatch received a 911 call stating that Mr. McFarlin was driving a tractor up and down the residential street. The 911 caller also stated that Mr. McFarlin was ramming the tractor into his own vehicle.

4.  Portales Police Dispatch proceeded to contact Deputy Daniel Boan ("Deputy Boan"). Deputy Boan headed to the scene, accompanied by Deputy Martin Williamson ("Deputy Williamson").

5.  When Deputies Boan and Williamson arrived on scene, they attempted to speak with Mr. McFarlin. However, before the deputies could speak with him, Mr. McFarlin drove away.

6.  Deputies Boan and Williamson followed Mr. McFarlin and the tractor.

7.  On January 15, 2018, Roosevelt County Sheriff Malin Parker ("Sheriff Parker") and Deputy David Meeks were not on duty. However, both men were at home monitoring their police dispatch radios.

8.  Sheriff Parker and Deputy Meeks both heard the call come in to Deputy Boan.

9.  Because of the nature of the call, Sheriff Parker and Deputy Meeks decided to go out and assist Deputy Boan.

10. Sheriff Parker and Deputies Meeks, Williamson and Boan were the first responders to the scene.

11. Sheriff Parker and Deputies Meeks, Williamson and Boan proceeded to follow Mr. McFarlin.

12. The rate of speed at which Mr. McFarlin was traveling was under twenty-five miles per hour.

13. Eventually, Mr. McFarlin made his way to a vacant field at the intersection of South Kilgore Street and 18th Street in Portales, New Mexico.

14. Sheriff Parker and Deputy Boan followed behind the tractor.

15. At this point, the tractor was travelling approximately 5-10 miles per hour and making circles in the vacant field.

16. Sheriff Parker instructed Deputy Meeks to use his long gun to try and stop Mr. McFarlin. However, Deputy Meeks was unable to safely shoot the tractor's tires.

17. Sheriff Parker instructed Deputies Williamson and Boan against using a spike strip to stop the tractor.

18. Deputy Williamson briefly considered shooting Mr. McFarlin to stop the tractor but decided against using deadly force.

19. After Deputy Meeks was unable to get a clear shot to stop the tractor, Sheriff Parker fired his shotgun twice at the tractor's tires.

20. Mr. McFarlin continued to the drive the tractor in circles within the field.

21. Sheriff Parker then decided to use deadly force to stop the tractor, aiming his shotgun out of the window of his patrol unit and firing several shotgun rounds of buckshot at Mr. McFarlin.

22. The shotgun rounds shattered the back window of the tractor, hitting Mr. McFarlin.

23. Mr. McFarlin slumped to the right and the tractor began to travel in a slow circle.

24. One of Sheriff Parker's shotgun rounds pierced through the back of Mr. McFarlin's skull

while another penetrated the flesh of his right ear.

25. Deputy Boan approached the tractor. Once he realized that Mr. McFarlin was injured, Deputy Boan jumped onto the tractor, opened the door and turned the machine off.

26. Deputy Williamson then jumped onto the tractor to assess Mr. McFarlin's injuries. Mr. McFarlin had blood streaming down his head and neck and onto his jacket.

27. Deputy Parker ordered Mr. McFarlin to show him his hands.

28. Mr. McFarlin slowly raised his left hand. However, due to his injuries, he was unable to raise his right hand.

29. Mr. McFarlin explained that he couldn't "move or hear."

30. Mr. McFarlin then began to lose the feeling in his hands.

31. Deputy Williamson asked Mr. McFarlin for his name. Mr. McFarlin could not remember his name.

32. Mr. McFarlin then told Deputy Williamson that he was beginning to lose his eyesight.

33. Mr. McFarlin also told Deputy Williamson that he was getting cold and that he was going to die.

34. Portales Emergency Medical Services ("EMS") personnel arrived and started emergency treatment on Mr. McFarlin. EMS personnel applied quick clot and gauze bandages to the back of his head to stop the bleeding.

35. EMS personnel then asked Mr. McFarlin his name, date of birth and age. He could not remember the correct answer to any of these questions. Mr. McFarlin's speech was also becoming increasingly incoherent.

36. EMS personnel removed Mr. McFarlin from the tractor and transported him by ambulance to Roosevelt General Hospital in Portales, New Mexico.

37. After receiving initial treatment at Roosevelt General Hospital, Mr. McFarlin was transported to University Medical Center in Lubbock, Texas. University Medical Center was better equipped to deal with serious injuries like Mr. McFarlin's.

38. On January 18, 2018, New Mexico State Police Agent Bryan Conner ("Agent Connor") visited Mr. McFarlin at University Medical Center. Agent Conner sought to get a statement from Mr. McFarlin regarding the shooting.

39. However, Mr. McFarlin was unable to provide Agent Connor with a statement due to his limited mental capacity.

40. On January 25, 2018. Mr. McFarlin was released from University Medical Center and moved back to Arizona to be closer to family who could care for him.

41. As a result of the shooting, Mr. McFarlin is permanently disabled.

42. Mr. McFarlin suffers from chronic headaches, impaired vision, loss of balance, neck pain, and numbness in his legs. Mr. McFarlin also has difficulty remembering things, difficulty thinking and difficulty maintaining a conversation.

43. Mr. McFarlin currently attends physical therapy sessions and receives medication for his chronic pain.

44. At the time of the shooting, Mr. McFarlin was not an immediate threat to officers or the public. Mr. McFarlin was also unarmed.

45. Mr. McFarlin also had both of his hands on the steering wheel, in plain sight.

46. Sheriff Parker was the only shooter at the scene that day.

47. At the time of the incident, Sheriff Parker had been the Sheriff of Roosevelt County for approximately three years.

48. Sheriff Parker currently has approximately eighteen years total of law enforcement

experience. Sheriff Parker's previous law enforcement employment includes being employed as a Roosevelt County Sheriff's Office ("RCSO") deputy, a deputy in the town of Elida, NM and an undercover narcotics agent to the Region 5 Drug Task Force in Curry County.

49. Sheriff Parker also served as the Chief Deputy for Roosevelt County for eight years before being elected Sheriff of Roosevelt County.

50. Sheriff Parker's duties include the day to day operations of the RCSO.

51. Sheriff Parker's duties also include the training and overall supervision of approximately seventeen RCSO employees.

52. Approximately fourteen certified RCSO deputies were serving under Sheriff Parker at the time of the incident.

53. Sheriff Parker is responsible for approving and implementing policies governing the law enforcement practices of the RCSO.

54. Sheriff Parker sometimes implements policies from other agencies while consulting with the New Mexico Association of Counties.

55. Under New Mexico law, the Sheriff is the policymaker for the County. *See, e.g., Wilson v. Montano*, 715 F3d 847, 856-57 (10th Cir.).

### **COUNT I: BATTERY**

56. Mr. McFarlin incorporates all preceding allegations as if fully stated herein.

57. Sheriff Parker intentionally shot Mr. McFarlin without sufficient provocation or justification while acting in the course and scope of his duties.

58. Sheriff Parker caused an offensive contact with Mr. McFarlin's person.

59. Sheriff Parker's actions constitute a battery within the meaning of Section 41-4-12 of the New Mexico Tort Claim Act.

60. The Board of County Commissioners of the County of Roosevelt is responsible to Mr. McFarlin under the doctrine of *respondeat superior* for the intentional and offensive acts of Sheriff Parker.

61. As a result of Sheriff Parker's battery, Mr. McFarlin suffered injury and resulting damages.

62. Mr. McFarlin's damages include loss of enjoyment of life, lost earning capacity, physical injury, invasion of bodily integrity, pain and suffering, future medical injuries, and psychological harms and injuries.

## COUNT II: DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (EXCESSIVE FORCE)

63. Mr. McFarlin incorporates all preceding allegations as if fully stated herein.

64. Sheriff Parker was, at all times material herein, acting under color of state law.

65. Mr. McFarlin had a right under the Fourth Amendment of the United States Constitution to be free from excessive use of force by law enforcement officers.

66. Sheriff Parker's decision to shoot Mr. McFarlin was objectively unreasonable, as Mr. McFarlin was not an immediate threat to officers or the public.

67. At the time Sheriff Parker deployed lethal force on Mr. McFarlin, he had no reason to believe that Mr. McFarlin posed a threat of immediate, serious physical harm to himself or anyone else.

68. Sheriff Parker's actions were not justified under the Fourth Amendment of the United States Constitution.

69. Sheriff Parker's intentional actions resulted in the deprivation of Mr. McFarlin's Fourth Amendment right to be free of excessive force.

70. As the policymaker for the County, the single act of Sheriff Parker in using excessive

force renders the County liable for his actions.

71. As a direct and proximate result of Sheriff Parker's actions, Mr. McFarlin suffered damages, loss of enjoyment of life, lost earning capacity, physical injury, invasion of bodily integrity, pain and suffering, future medical injuries, and psychological harms and injuries.

72. Sheriff Parker acted with reckless indifference when he opened fire on Mr. McFarlin. An award of punitive damages is necessary to punish Sheriff Parker's conduct and prevent the wrongful shooting of Roosevelt County residents in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

I.    Actual and compensatory damages sufficient to make Plaintiff whole against Defendant;

II.   Damages for Plaintiff's pain and suffering and loss of enjoyment of life;

III.  Litigation expenses, attorney fees, costs, pre- and post-judgment interest as provided by law; and

IV.   Such other and further relief as the Court deems just and proper.

Respectfully submitted.

**KENNEDY KENNEDY & IVES, PC**

*/s/ Joseph P. Kennedy*
Joseph P. Kennedy
Erin L. Chavez
*Attorneys for Plaintiff*
1000 2nd Street NW
Albuquerque, New Mexico 87102
(505) 244-1400 / F: (505) 244-1406
jpk@civilrightslaw.com
elc@civilrightslaw.com